## P. Kay Barbour v. James R. Barbour

[505 A.2d 1217]

No. 83-555

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed January 24, 1986

*Donald E. O'Brien*, Burlington, upon appeal; and *Ronald Schmucker*, South Burlington, at hearing, for Defendant-Appellant.

**Hill, J.** Defendant, James Barbour, appeals an order of the trial court claiming that the court abused its discretion in refusing to incorporate the terms of the parties' stipulation into the final divorce decree. We affirm in part, reverse in part and remand the case for further proceedings.

The parties to the divorce, Kay and James Barbour, entered into a stipulation which they asked the court to incorporate into the final order. The stipulation provided that the Barbours would have joint custody of their two children, then aged 14 and 13. The

children were to spend alternate weeks living with each parent, except during summers and vacation periods, when the schedule would be more flexible. The stipulation contained detailed provisions for the sharing of expenses relating to the children. The parties also agreed that if either of them should leave the Burlington area, the departing parent would relinquish joint custody in favor of the remaining parent. At the time of the agreement the parties lived three miles apart.

At final hearing the parents testified in detail concerning the shared custody arrangement under which they had operated prior to the hearing. The testimony indicated that the arrangement had worked to the satisfaction of both the children and the parents. A psychologist testified that the arrangement was the most beneficial custodial scheme for the children, and a guidance counselor testified that both children had adjusted well to the custodial arrangement.

Following the hearing, the court, acting through a majority consisting of the two assistant judges, disapproved the stipulation and awarded custody to the mother, with visitation rights at all reasonable times and places in the father. The presiding judge dissented.

## I.

In *Lumbra* v. *Lumbra*, 136 Vt. 529, 532, 394 A.2d 1139, 1142 (1978), this Court expressed its view that "[j]oint custody is rarely the best solution to a custody dispute" and held that "joint custody should only be decreed in cases where there is a finding of extraordinary circumstances." It did not, however, intend to discourage judges from incorporating joint custody agreements into final orders in appropriate cases where, as here, custody is not in dispute. As was stated in *Berlin* v. *Berlin*, 139 Vt. 339, 340, 428 A.2d 1113, 1114 (1981):

> The court does not stand in opposition to joint custody; it merely recognizes that the same lack of agreement that requires that the courts be asked to settle domestic difficulty also indicates that the possibility of a cooperative custody solution is usually remote.

We do not suggest that the court in this case was bound to accept the terms of the stipulation submitted by the parties.

"Agreements between the litigating parties in divorce actions are not conclusive or binding upon the courts where the interests of the children are concerned." *Korshak* v. *Korshak*, 140 Vt. 547, 550, 442 A.2d 464, 466 (1982). Courts involved in divorce litigation are bound to "make an order concerning the custody of any minor child of the marriage"; in fulfilling this duty they are to be "guided by the best interest of the child . . . ." 15 V.S.A. § 652(a).

In *Lumbra, supra*, 136 Vt. at 532, 394 A.2d at 1142, we noted that the fitness of the parents, their ability to cooperate, the age of the child and the distance between the houses were some of the key concerns that should be reviewed by trial courts considering joint custody awards. In light of these factors, the total inadequacy of the majority's findings of fact below is apparent. There were no findings as to the fitness of the parents; their ability to cooperate in the raising of their children; the relationship of the ages of the children to the proposed joint custody arrangement; or the appropriateness of the arrangement in general. The court simply laid out the basic terms of the custody agreement and then summarily rejected them. Since facts essential to the disposition of the custody issue have not been stated, that portion of the court's order dealing with custody is reversed and the matter is remanded for further proceedings on this issue.* See *Mayer* v. *Mayer*, 144 Vt. 214, 216-17, 475 A.2d 238, 240 (1984) (facts essential to the disposition of the case must be stated to enable this Court, on appeal, to determine how the trial court's decision was rendered).

The defendant also contests the trial court's refusal to incorporate into the final order the provisions of the stipulation dealing with termination of maintenance in terms of time, remarriage, death or change in relative income of the parties; medical and dental insurance for the children; the sharing of post-high school educational expenses of the children; the naming of the children as life insurance and pension benefit beneficiaries; and the sharing of the expenses of raising the children. Defendant maintains

---

* On remand, the court will, of course, be guided by the criteria set forth in Vermont's recently amended custody statute. See 15 V.S.A. § 652. Although the statute largely parallels prior case law on this issue, we note in passing that "the wishes of the parents" is one factor to be considered by the court in determining whether joint custody would be in the best interest of the children.

that all these provisions should have been incorporated into the final order as they were just and reasonable.

In *White* v. *White*, 141 Vt. 499, 502-03, 450 A.2d 1108, 1110 (1982), we noted that there was a difference between stipulations concerning property division and alimony and stipulations concerning child support: "In the case of property division and alimony the resulting contract between [the parties] is a presumptively fair, formal, and binding promise to perform, which our courts will not lightly overturn since the parties may have bargained away rights or positions of advantage in exchange for other consideration." See also *Strope* v. *Strope*, 131 Vt. 210, 216, 303 A.2d 805, 809 (1973).

On the other hand, "[a] stipulation between husband and wife on matters pertaining to child support merely reflects what the parties have settled on as an arrangement agreeable to them." *White, supra*, 141 Vt. at 503, 450 A.2d at 1110. While it will generally be incorporated into the divorce decree if the trial court finds that the stipulation is just and reasonable, the court must have broad discretionary judgment in deciding whether to accept or reject the parties' child support arrangement to promote society's interest in the care and maintenance of children. See *id.*

Since the court in this case rejected the proposed joint custody arrangement, the provisions of the stipulation pertaining to child support appeared inapposite. This explains why the court found "no evidence of the amount needed to provide properly for the children within the parties' means" and ordered the defendant to make regular contributions to the plaintiff. Because we believe that the issues of child support and custody are inextricably intertwined, we refuse to simply adopt the terms of the stipulation without a further hearing. Consequently, the matter must be reversed and remanded to the trial court for further proceedings on this issue.

The parties' agreement with respect to maintenance poses a different question. As we earlier intimated, trial courts have less latitude in this area than they do where the interests of the children of the marriage are directly affected. *Id.* at 502-03, 450 A.2d at 1110. Where the parties' agreement appears to the court to be reasonable, it should be incorporated into the final divorce decree unless the trial court can state with particularity why it is unjust. See *Strope, supra*, 131 Vt. at 218, 303 A.2d at 809-10 (record must demonstrate a compelling reason for the court not accepting

provisions of stipulation dealing with alimony and a justification of its order where agreement appears to the court to be reasonable).

The trial court in this case clearly considered the terms of the parties' maintenance agreement to be reasonable as its final order mirrored the stipulation except for the terms dealing with termination of payments. Since the record nowhere demonstrates a compelling reason for the court not to accept such terms, they will be incorporated into the divorce decree.

## II.

It is noted that the examination of the parties and witnesses at the final hearing was conducted by an attorney who indicated that his "presence was not as an attorney for the plaintiff or defendant but who drafted the Final Stipulation between them as divorce mediator and who elicited responses from both plaintiff and defendant as required by law."

We recognize that divorce mediation is a growing trend in this country. Spouses whose marriages have fallen into a state of irreparable disrepair seek increasingly to dissolve them in a nonadversarial setting. Often the mediation is conducted by a person who is also a lawyer, sometimes in conjunction with a team of experts in other fields equipped to deal with the various problems other than legal which often arise when a severance of the marital relationship is about to occur.

Lawyer involvement as the mediator raises ethical concerns. See EC 5-20 ("After a lawyer has undertaken to act as an impartial arbitrator or mediator, he should not thereafter represent in the dispute any of the parties involved."); see also DR 5-105(C); EC 9-2. Where children are involved the court is obligated to award custody in accordance with their best interests, 15 V.S.A. § 652(a); that determination will not necessarily always accord with the agreement the parties present to the court. *Korshak, supra,* 140 Vt. at 550, 442 A.2d at 466-67. In making its determination, the court may consider the wishes of the parents, the interaction and interrelationship of the children with their parents, siblings and other persons, the children's adjustment to home, school and community, the mental and physical health of all individuals involved, as well as other relevant factors. 15 V.S.A. § 652. Representation of the parties to a divorce at the

hearing stage by a lawyer who has participated in the negotiations and trade-offs that normally go into the agreement-making process does not insure that a full and complete presentation of the relevant factors relating to custody will occur.

Further, the problems which could and probably would arise involving the lawyer-client privilege in the event of client misunderstanding or disagreement, or court rejection of the agreement, likewise mitigate against lawyer-mediator involvement at hearing.

It is not here necessary to determine at what stage of the mediation process the lawyer must terminate his relationship. Suffice it to say that it must not carry over into the courtroom.

*Affirmed on divorce, property division and maintenance with directions to amend decree to incorporate provision of stipulation relating to termination of maintenance; reversed and remanded for a new trial on custody and child support.*

**Allen, C.J.,** concurring in part and dissenting in part. I agree that *Lumbra v. Lumbra,* 136 Vt. 529, 394 A.2d 1139 (1978), was not intended to discourage joint custody in appropriate cases where custody is not in dispute. I dissent from that part of the order which remands this matter for a new trial on custody and child support.

There was ample evidence in the record from which findings with respect to custody could and should have been made. The issue was thoroughly explored and competently presented. The presiding judge found that the custody arrangement was fair and reasonable, and that "all of the factors outlined in *Lumbra* militate in favor of joint custody . . . ."

The parties should not be required to incur the time, expense and delay of a new hearing in this matter. I would affirm the decree of divorce on the merits; I would strike the remainder of the decree and remand the case to the trial court with instructions to prepare a new decree incorporating the terms and conditions of the stipulation of the parties. See *Strope v. Strope,* 131 Vt. 210, 219, 303 A.2d 805, 811 (1973).

I am authorized to state that Justice Underwood joins in this opinion.