**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-033



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2023

| | |
|---|---|
| Beverly Spaulding (Minor)\* v. Thomas Minor | APPEALED FROM:<br><br>Superior Court, Franklin Unit,<br>Family Division<br>CASE NO. 22-DM-01295<br>Trial Judge: Elizabeth Novotny |

In the above-entitled cause, the Clerk will enter:

Wife appeals from the trial court's decision on her motion to modify the parties' final divorce order.  We affirm.

The parties divorced in June 2022.  The final divorce order incorporated their stipulation regarding the division of their property.  The parties indicated in the stipulation that they did not own any real estate.  In fact, the parties held life estates in the former marital home where they had remained living.  They reserved these interests when they sold the property in 2011 to their son and daughter-in-law.  Pursuant to the deed, their life estates would terminate if they did not occupy the property for six months.

In September 2022, wife filed a pro se motion to modify the final divorce order.  She referenced her life estate and argued that husband had prevented her from accessing the former marital home.  Wife indicated that she was seeking compensation for her property rights.

The court held a hearing in November 2022.  Both parties were represented by counsel and both testified to their intent in signing the stipulation.  Wife stated that at the time she signed the stipulation, she intended to move out of the former marital residence and into a particular apartment complex for seniors.  She intended to live in the apartment complex for the rest of her life.  Husband intended to remain in the home.  Wife was aware that she had a life estate in the former marital property and she did not expect to receive any money for that interest.  When the divorce became final, wife left the home with no intent of returning.  Wife testified that she did

not know her life estate was a property interest until she talked to an attorney and she was unaware she would have any right to compensation for that interest.

After the divorce became final, wife was able to get on the waiting list for the apartment that she wanted. Wife did not want to sign a year's lease on a different apartment, however, while she waited for the senior apartment to become available. Because of this, she testified that she had wanted to move back into the former marital residence until the senior apartment became available. She also wanted to remove her belongings from the home but said the locks were changed. As of the date of the hearing, wife had moved into the apartment she wanted.

Husband testified to a similar understanding of the parties' intent concerning their life estates. He knew he held a life estate. He planned to remain living in the home and wife "wanted out." It was understood that once wife moved out, she would not be returning.

The court made findings on the record at the close of the hearing. It found that wife drafted the stipulation and checked the box indicating that the parties did not own any real estate. At that time, neither party understood that a life estate was considered an interest in real property. They did understand, however, that each possessed a life estate. They understood that husband would continue living on the property and that wife would move out permanently once the divorce stipulation was accepted. Wife thereafter found it hard to find housing.

The court found that while the parties mistakenly believed the life estates were personal property rather than real property interests, their intent as to the disposal of these interests remained the same. The court noted that any value ascribable to the life interests would have been for the parties to determine. At the time of the stipulation, wife did not expect any payment for her interest beyond what the parties had otherwise agreed to regarding the distribution of their other assets. Wife wanted out of the house.

The court explained that the parties had signed a written agreement with the understanding that wife would extinguish her life estate in six months when she moved out permanently. Wife never planned on using the life estate at the time she signed the divorce stipulation. Her execution of the final stipulation constituted a written waiver.

Thus, for the reasons above, the court granted wife's motion in part, amending the final divorce order to reflect the parties' intent that wife was extinguishing her life estate when—at the time of the divorce—she expressed her wish to move out of the residence, never to return. The court later issued a written order to this effect, modifying the parties' stipulation to provide:

> Paragraph 7. Real Estate: The parties have a life estate interest in the former marital residence located at 2278 Cambridge Road, Cambridge, Vermont (hereinafter the "Property"). By the date of the final decree of divorce, [wife] shall move from the Property and not return to the Property. [Husband] will remain living in the Property.

Wife moved to alter or amend the court's decision, suggesting that she should receive maintenance for relinquishing her life estate. She further asserted that, in amending the order,

the court should have considered if the initial stipulation was equitable, i.e., whether it was equitable for her to have relinquished her life estate without consideration for her financial need to find alternative housing.

The court denied the motion, reiterating its findings regarding the parties' clear intent. It explained that the parties entered into their agreement mindful that wife had a life estate in the property, which would be extinguished pursuant to the terms of the deed after six months of non-occupancy of the home. The court found that no separate consideration was needed to effectuate this result. Wife appeals.

Wife argues on appeal that the parties had, at best, an oral agreement regarding the real-property interests and that any agreement was based on a mutual mistake about the nature of that interest. She contends that we should consider the factors set forth in Catamount Slate Products, Inc. v. Sheldon, 2003 VT 112, ¶¶ 14, 17, 176 Vt. 158, to determine if the parties intended to be bound by an oral agreement without a fully executed written document. She suggests that the court amended the parties' agreement based on an oral stipulation and that it was required to first consider if the result was equitable or obtained by duress. Wife also asserts that husband locked her out of the house and threatened her.

"We have used contract principles to construe divorce decrees based on stipulations." Sumner v. Sumner, 2004 VT 45, ¶ 9, 176 Vt. 452. We consider de novo if the stipulation is ambiguous and thus, whether we "should look beyond the plain language to discern the parties' intent." Towslee v. Callanan, 2011 VT 106, ¶ 5, 190 Vt. 622 (mem.) (quotation omitted). The interpretation of an ambiguous contract presents "a question of fact to be determined based on all of the evidence—not only the language of the written instrument, but also evidence concerning its subject matter, its purpose at the time it was executed, and the situations of the parties." Id. On review, the trial court's findings will stand unless clearly erroneous. Willey v. Willey, 2006 VT 106, ¶ 11, 180 Vt. 421.

Like the trial court, we reject the premise of wife's argument. Wife did not orally waive her interest in real property nor was there a mutual mistake about the disposal of the parties' life-estate interests. The record supports the court's finding that the parties were aware of their life estates when they signed the stipulation and they clearly intended that husband would remain in the home while wife would move out permanently, thereby terminating her interest after six months. The testimony was undisputed on this point. Whatever value wife attributed to the life estate, she chose to relinquish it. The parties' misunderstanding about whether the life estates were personal property or real property does not change their clear intent as to how these interests would be disposed. The record supports the conclusion that the parties divided their property in writing with the understanding that it encompassed and disposed of the life estates that each held. They indicated that they had divided their personal property to their satisfaction and that each should retain what they possessed; they expressed their belief that the agreement was "a fair and reasonable resolution of all the issues related to our marriage." Given their written stipulation, there was no violation of the statute of frauds, as wife suggests. See 12 V.S.A. § 181(5) (providing that no action of law can be brought in case involving interest in real property unless agreement "is in writing, signed by the party to be charged therewith"). In ruling on wife's motion to modify, the court was not required to evaluate the factors set forth in 15

V.S.A. § 751 with respect to the parties' stipulation. As we have recognized, "[o]nce a stipulation is incorporated into a final order, concerns regarding finality require that the stipulation be susceptible to attack only on grounds sufficient to overturn a judgment." Pouech v. Pouech, 2006 VT 40, ¶ 20, 180 Vt. 1; see also Bucholt v. Bucholt, 152 Vt. 238, 241 (1989) (holding that unchallenged stipulations accepted by trial court and incorporated into final divorce order are presumed to be fair, formal, and binding on parties). We find no error in the court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice